**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| LONNIE BRAY EL, | ) | CASE NO: 1:16CV2160 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| CITY OF EUCLID, | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |

Currently pending before the Court is Defendant City of Euclid's "Motion for Judgment on the Pleadings."[1] (Doc. No. 16.)  Plaintiff Lonnie Bray El, proceeding *pro se*, filed a Brief in Opposition on January 31, 2017, to which Defendant replied.  (Doc. No. 20, 21.)

For the following reasons, Defendant's Motion (Doc. No. 16) is GRANTED as follows.  Plaintiff's federal claims are dismissed with prejudice.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and, therefore, those claims are dismissed without prejudice.

## I.  Procedural Background

On August 29, 2016, Plaintiff Lonnie Bray El ("Plaintiff" or "Bray El") filed a *pro se* Complaint against Defendant City of Euclid alleging numerous state and federal claims arising from his arrest, detention, and prosecution for various drug charges.  (Doc. No. 1.)  Defendant

---

[1] This case is before the Court upon consent of the parties, entered November 28, 2016. (Doc. No. 14.)

City of Euclid filed an Answer on October 25, 2016.  (Doc. No. 8.)  A case management conference was thereafter conducted on November 22, 2016, at which time case management deadlines were set.  (Doc. No. 13.)

On December 20, 2016, Plaintiff filed an Amended Complaint, again naming only the City of Euclid as a Defendant.  (Doc. No. 15.)  The Amended Complaint asserts the following federal and state law causes of action: (1) violation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 based on the First, Fourth, Fifth, Eighth, and Fourteenth Amendments; (2) abuse of process; (3) malicious prosecution; (4) conspiracy in violation of 18 U.S.C. § 241; (5) tampering with evidence; (6) unlawful restraint; (7) fraud; (8) falsification of evidence; (9) obstruction of justice; (10) dereliction of duty; (11) interference with civil rights; (12) organizational criminal liability; (13) giving false or fictitious information to law enforcement agents; (14) sham legal process; and (15) violations of "The Rights of Indigenous Peoples."  (*Id*.)

On January 3, 2017, Defendant filed a "Motion for Judgment on the Pleadings."  (Doc. No. 16.)  Plaintiff filed a Brief in Opposition on January 31, 2017, to which Defendant replied on February 21, 2017.  (Doc. Nos. 20, 21.)  Subsequently, on March 7, 2017, Plaintiff filed an Affidavit in which he averred that "The City of Euclid, a local municipality, conspired against Federally-secured Rights and did in doing so harm Me, for which The City of Euclid may grant Me relief in the amount of $3,082,000 USD and be bonded against me taking further actions what so ever in this matter."  (Doc. No. 22.)

## II.  Factual Allegations

The Amended Complaint contains the following factual allegations.

On the morning of July 11, 2014, Plaintiff drove his friend George DeLuca to the Extra

Space Storage facility in Euclid, Ohio to "help him lift something." (Doc. No. 15 at ¶ 7.)

Plaintiff describes the events that occurred that day as follows:

> At approximately 9:40 AM, as George Deluca and I approached the Extra Space Storage located at 23640 Lakeland Boulevard, Euclid, Ohio 44132, I noticed police activity, several police cars, a number of patrolmen, and a number of K-9 units blocking the entrance and exit. George Deluca assured me that the police were not there for him and I trusted him, yet, was unable to slow, or to stop, because within that section of Lakeland Boulevard, there is no shoulder and traffic is faster, because most of it relates to State Route 2/I90, and has higher posted speed limits than surrounding areas. We circled a couple of times until, finally, I asked, "Are you sure you want me to pull up in here [The Extra Space Storage in question]?" George Deluca said, "Sure, why not?" I did. Then for approximately three minutes, we sat parked without exiting and the windows up. Then I decided to leave. I pressed the brake peddle, shifted to reverse gear, then City of Euclid employees emerged with weapons drawn and shouting demands, then, searched and seized me and my property. . .

(*Id.*)

Plaintiff and Mr. DeLuca were arrested by Euclid police officers, detained for approximately five and a half hours, and questioned. (*Id.* at ¶ 8.) At this time, Plaintiff was advised the Euclid police had been alerted that a box containing marijuana had been sent to Mr. DeLuca's storage unit.[2] (*Id.*) Plaintiff was told the box had been shipped from Auburn, California with a shipping label that referenced Plaintiff's company, Angel Touch Films. (*Id.* at ¶ 9.) Plaintiff was "straight released" without bail or charge. (*Id.* at ¶ 8.) Euclid police seized his van, cell phone, and cash. (*Id.*)

Plaintiff thereafter left Ohio in November 2014 to travel for film and acting work in Florida; Hollywood, Los Angeles, and Compton, California; and Mazatlan and Mexico City,

---

[2] It appears the manager of the storage facility, James Spencer, mistakenly thought the box was addressed to him, opened it, and discovered sealed bags of what appeared to be marijuana. (Doc. No. 15 at ¶ 9.) Mr. Spencer alerted the Euclid Police Department, which responded to the scene. (*Id.*)

Mexico. (*Id.* at ¶ 12.) On December 10, 2014, while Plaintiff was out of state, Plaintiff and Mr. DeLuca were indicted by a Cuyahoga County Grand Jury on the following five counts stemming from the July 11, 2014 incident: (1) trafficking in violation of Ohio Rev. Code § 2905.03(A)(2) (Count One); (2) drug possession in violation of Ohio Rev. Code § 2925.11(A) (Count Two); (3) trafficking in violation of Ohio Rev. Code § 2925.03(A)(2) (Count Three); (4) drug possession in violation of Ohio Rev. Code § 2925.11(A) (Count Four); and (5) possessing criminal tools in violation of Ohio Rev. Code § 2923.24(A) (Count Five). (*Id.* at ¶ 6, 19-25.) *See State v. Bray El*, Cuyahoga County Court of Common Pleas Case No. 14-591557. Each of these counts contained several forfeiture specifications. (*Id.*)

Plaintiff states that "[o]n December 24, 2014, when it was known that I was not in Ohio, a warrant arrived to my mailing address, was signed for by a family member, then tossed in a heap of mail that sat and got lost, and I never knew about it."[3] (*Id.* at ¶ 27.) On August 12, 2015, while Plaintiff was in Mexico, he went to the U.S. Embassy in Mexico City seeking help with a passport issue. (*Id.* at ¶¶ 12, 27.) He was instead immediately deported to Los Angeles as a result of the outstanding warrant issued in his criminal case. (*Id.*) Plaintiff asserts that, when he was deported, he was forced to leave behind all his personal property. (*Id.*)

Plaintiff was thereafter detained in the Los Angeles County Jail from August 12, 2015 until approximately September 1, 2015. (*Id.* at ¶ 12.) During this time, Plaintiff claims he was

---

[3] The state court docket from Plaintiff's underlying criminal trial indicates a Criminal Summons was sent by federal express to Plaintiff's home address, and returned as delivered on December 12, 2014. *See State v. Bray El*, Cuyahoga County Court of Common Pleas Case No. 14-591557. A capias was issued on December 24, 2014. (*Id.*)

4

"forced to use toilets positioned under a surveillance camera that is monitored by females;"

"forced to bunk on triple bunk beds, on which were impossible to sit up, like I was part of a

sandwich;" and placed into close contact with "men from foot to ears, eyelids, faces, and bald

heads covered in tattoos representing magic, cultural affiliation, and method of gaining gang

entry, either through vicious and heinous murder or homosexual act with the leader." (*Id*. at ¶

68.) Plaintiff claims he was frightened and stressed and, further, that he continues to suffer from

stress as a result of this experience. (*Id*.)

On or about September 1, 2014, Plaintiff was transported from the Los Angeles County

Jail to the Cuyahoga County Jail in a van operated by Prisoner Transportation Services. (*Id*. at ¶

12, 28.) Plaintiff claims he was mistreated during the van ride as follows:

> During seizure, Prisoner Transportation Services agents forced me to suffer and
> endure days of 100 degree Fahrenheit temperatures through California, Nevada,
> New Mexico, and Arizona in a van with a broken air-conditioner, nights of cold
> without a blanket, and continuously banging my head on the transport van's
> exposed and jagged metal, as my combined length from torso to head exceeds the
> van's distance from seat to ceiling and at least one Prisoner Transport agent drove
> so recklessly that police twice pulled him over for speeding, and once cited him.
> Also, I was and continue to be tormented by the inhumane treatment of other male
> and female detainees at the hands of Prisoner Transportation Services agents,
> such as being refused the ability to lay down for three days and nights, being
> forced to urinate, defecate, and vomit in plastic bags, then have me inhale the
> aromas from such for hours. A spider bite caused paralysis, nausea, pain, and
> rapid flesh deterioration to one detainee. He was dying. He had to be taken to the
> hospital. Then, against doctor's orders, Prison Transportation Services agents
> forced the detainee out of a hospital and back into the oven of a van.

(*Id*. at ¶ 28.)

Plaintiff was transferred to the Cuyahoga County Jail and detained there until December

4, 2015. (*Id*. at ¶ 12.) He claims "Cuyahoga County employees forced me to undergo a medical

procedure in the form a tuberculosis shot, which I did not want; yet, reluctantly accepted at

Cuyahoga County employee threats of solitary confinement for an unknown amount of time if I did not accept the shot." (*Id.* at ¶ 29.)  Plaintiff also asserts that, while detained in the Cuyahoga County Jail, "a spider bit me that became infected, became extremely painful for weeks, stressed me out wondering how much more I had to endure, would I end up like the other detainee, and the experience has left me suffering from permanent scar tissue, and spider-related issues that cause me stress and anxiety." (*Id.* at ¶ 32.)

Plaintiff claims he was released on bond on or about December 4, 2015.  (*Id.* at ¶ 12.)  He was monitored via ankle bracelet from December 4th until December 14th 2015, "all without my consent." (*Id.*)  On December 14, 2015, all charges against Plaintiff were dismissed without prejudice at the request of the prosecutor.  *See State v. Bray El*, Cuyahoga County Court of Common Pleas Case No. 14-591557.  The state trial court ordered the Euclid Police Department to return to Plaintiff "all money and property" that had been seized from him.[4]  (*Id.*)

### III.  Standard of Review

Under Fed. R. Civ. P. 12(b)(6),[5] the Court accepts the plaintiff's factual allegations as

---

[4] Previously, on March 4, 2015, Mr. DeLuca pled guilty to two counts of trafficking in violation of Ohio Rev. Code §2925.03(A)(2).  On April 8, 2015, Mr. DeLuca was sentenced to an aggregate term of five (5) years imprisonment.  *See State v. DeLuca*, Cuyahoga County Court of Common Pleas Case No. CR-14-591557-A.

[5] Defendant's motion is captioned a "Motion for Judgment on the Pleadings," which arises under Fed. R. Civ. P. 12(c).  (Doc. No. 16.)  In the body of the motion, however, Defendant repeatedly references Fed. R. Civ. P. 12(b)(6) and states it is seeking dismissal for failure to state a claim under that Rule.  (Doc. No. 16 at 1; Doc. No. 16-1 at 6.)  As Defendant did not file an Answer to the Amended Complaint, the Court will treat the motion as a motion to dismiss under Rule 12(b)(6).  The Court notes, however, that the same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings.  *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011); *Ehrlich v. Kovack*, 135 F. Supp.3d 638, 649 (N.D. Ohio 2015).

true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Gunasekera*, 551 F.3d at 466

(quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081

(2007)) (quoting *Twombly*, 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and

generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*,

556 U.S. at 679, 129 S.Ct. 1937.

### IV.  Analysis

**A.    Federal Claims**

**1.    Section 1983 Claims**

Plaintiff alleges a number of claims against Defendant City of Euclid pursuant to 42

U.S.C. § 1983.   To maintain a claim under Section 1983, a plaintiff must establish that he was

deprived of a right secured by the Constitution or the laws of the United States, and that the

deprivation was caused by a person acting under color of state law.  *See West v. Atkins*, 487

U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Simescu v. Emmet County Dep't of Soc.

Services*, 942 F.2d 372, 374 (6th Cir. 1991).  Section 1983 "is not itself a source of substantive

rights," but merely provides "a method for vindicating federal rights elsewhere conferred."

*Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).  The first

step in any such claim is to identify the specific constitutional right allegedly infringed. *Graham

v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Baker*, 443 U.S. at 140.

Plaintiff alleges violations under the First, Fourth, Fifth, Eighth and Fourteenth

Amendments.  With regard to the Fourth and Fourteenth Amendments, Plaintiff alleges the

following:

- "The City of Euclid unreasonably searched and seized me and my property; i.e.,
  under color of law and breaking oath of office, because no element of an offense

8

occurred." (*Id*. at ¶ 66.)

- "The City of Euclid concealed physical evidence, communicated false information to other persons, and arrested me arbitrarily, motivated for a purpose other than those for which law is designed, or ulterior to due process of law and bringing an offender to justice." (*Id.)*

- The City of Euclid "acted against full faith disclosure and Miranda rules and broke oath of office" by withholding exculpatory evidence, making false statements, "altering and documenting the altered interview footage as discovery." (*Id*. at ¶ 67.)

- Unreasonable search and seizure based on the allegation that "the City of Euclid unlawfully forced me to be extradited from Mexico to Los Angeles, California instead of to Cleveland, Ohio" and "utilized Prison Transport Services to transport me in a series of other harsh jail stays, and harsh rides across America, as opposed to transporting me by plane, train, the less expensive option, making this already extraordinary circumstance even more cruel and unusual, establishing the City of Euclid's ulterior motive and act[s] not proper or within the scope of process of law." (*Id*. at ¶ 68.)

Plaintiff next asserts violations of his Fifth Amendment rights, arguing "the City of Euclid fraudulently obtained an indictment against me, making that indictment fraudulent and colorable." (*Id*. at ¶ 64(d).) He also claims violations of the Fifth, Eighth, and Fourteenth Amendments, as follows:

The City of Euclid broke oath of office, and did willingly and knowingly, without probable cause and without Due Process, commit fraud in describing and portraying Lonnie Bray El as a drug trafficker and drug possessor, and possessor of criminal tools and/or that reasonable evidence exists to support probable cause to search, to seize, and to prosecute Lonnie Bray El, when in, fact, no such evidence exists. This false portrayal moved a judge, grand jury, and others to act and to move, escalating actions beyond certain Procedural Process Violations to Substantive Rights Violations referenced herein.

(*Id*. at ¶ 64(e)).

Plaintiff asserts Eighth Amendment violations based on his detention in the Los Angeles County Jail, as well as the City of Euclid's alleged use of Prison Transport Services to transport

9

him from Los Angeles to Cleveland via van.  (*Id*. at ¶ 68.)

Plaintiff then alleges violations of his First Amendment rights, as follows:

The City of Euclid did knowingly and willingly under color of law, break oath of office and commit **Fraud** and **Defamation** each time the City of Euclid documented [entered, uttered, and/or inserted into education and/or public information documentation] the false and inappropriate labels, portrayals, descriptions, remarks, and/ or findings as follows:

1.  the label of the box in question as reading, "Angel Touch Films," when in fact, it reads,  "Angle Touch Films (GAD)" and

2.  "Lonnie Bray El" as (a) "Accomplice,"

3.  "a bottle of chemicals for marijuana growing,"

4.  concerning the findings of James Spencer and forensic scientists, Jessica L.Mendofik, as no statements for the names, James Spencer or Jessica L. Mendofik exists, or appear on the prosecution' s witness list,

causing an arrest warrant to arrive to my mailing address on December 24th, 2014, Christmas Eve, to harm and to others by falsely and negatively portraying and describing me to family, friends, and the postal employee, who delivered the warrant at a most sacred and special times of gathering and love for so many in our nation as well as several others, demonstrating prosecution *motivated for a purpose other than those for which law is designed, or ulterior to **due process of law and bringing an offender to justice***, and producing communicative tools utilized to **Maliciously Prosecute**, to *injure*, and to ***abuse*** me *resulting in directly harming* me as herein described above and below, satisfying standing requirement, *[Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 409 (1997)].

(Doc. No. 15 at ¶ 64(a)) (emphasis in original).  He also asserts his First Amendment rights

were violated when "[t]hree times while in the custody of Prison Transport agents, who

identified themselves as Christians, historical enemies of cultured Moors, twice in Christian

County, once on the road outside of Las Vegas, Nevada, Prison Transport agents forced me to

eat pork or go hungry, in violation of the First Amendment clause guaranteeing religious

freedoms, as my known religion is ISLAM." (*Id*. at ¶ 65.)

Finally, Plaintiff alleges a host of due process violations under the Fourteenth

Amendment, including the following:

- Fraud and Defamation based on the City's identification of Plaintiff as "African American" and/or "Black," which Plaintiff argues "creat[ed] propaganda destroying my identity and Moorish culture." (*Id*. at ¶ 64(b)).

- Fraud and Defamation based on the City's description of Plaintiff as a drug trafficking "offender" and "accomplice." (*Id*.)

- Suppression of evidence and/or omitting exculpatory facts. (*Id*. at ¶ 64(c)).

- Presenting false evidence. (*Id*. at ¶¶ 64(g), 64(h)).

- "Either the K-9 Rocky unit did not positively alert to drugs, meaning another count of the City of Euclid committing 14th Amendment Fraud-Malicious Prosecution- Deprivation of Rights, or the City of Euclid failed to train the K-9 Rocky Unit, because no drugs were present." (Id. at ¶ 64(i)).

- Concealment of physical evidence, communicating false information, arbitrary arrest, and unreasonable search and seizure. (*Id*. at ¶ 66.)

- Failure to produce alleged exculpatory evidence and alteration of interview footage. (*Id.* at ¶ 67.)

- Forcing Plaintiff to endure the "extraordinary circumstance" of international extradition, detention in the Los Angeles County Jail, and cross-country transport via van while in the custody of Prison Transport Services. (*Id*. at ¶ 68.)

- "Under color of statute, motivated to prosecute for a purpose other than those for which law is designed, ulterior to due process of law and bringing an offender to justice, the City of Euclid did knowingly and willingly break oath of office, move and act abusively with power 'possessed by virtue of state law and made possible only because [the City of Euclid] is clothed with the authority of state law." (*Id*. at ¶ 69.)

- "Two or more City of Euclid employees did knowingly and willingly break oath of office, and conspire to injure, oppress, threaten, and/or intimidate me in the free exercise or enjoyment of rights secured to me by the Constitution and laws of the United States as described herein above and below." (*Id*. at ¶ 70.)

Additionally, and throughout the Amended Complaint, Plaintiff claims the alleged constitutional violations set forth above also constitute malicious prosecution and abuse of process. He claims "the City of Euclid is responsible for all actions of the U.S. Embassy, U.S. Marshals, Los Angeles County Jail, Prisoner Transport Services, Cuyahoga County Jail, as well as agents, employees, and affiliates thereof." (*Id*. at ¶ 71.)

Defendant argues the Amended Complaint fails to state a claim upon which relief can be granted. Defendant emphasizes Plaintiff named only the City of Euclid as a Defendant in this action, and chose not to name any individual Euclid police officers or any of the other entities involved in his detention, transport, and prosecution. Defendant asserts "the City of Euclid, as an entity, cannot be held liable for the conduct of individuals simply based upon their status as employer or supervisor." (Doc. No. 16-1 at 4.) Rather, citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Defendant argues that, "in order to hold the City of Euclid liable, Plaintiff Bray El must plead some facts and elements of a claim that a policy, custom, or practice caused his injury." (*Id.* at 6.) Defendant maintains Plaintiff "has not plead that any specific policy, custom, or practice attributable to the City of Euclid directly and proximately caused his alleged injuries" and, therefore, the Amended Complaint fails to state a claim and should be dismissed.

In his Brief in Opposition, Plaintiff acknowledges he does not seek to sue any City of Euclid employee in his/her individual capacity and, further, states "[n]either is my argument constructed upon *Respondeat superior*." (Doc. No. 20 at 4.) Rather, Plaintiff argues "under color of Ohio State statute and through a local law, policy, custom, or usage, only possible because the City of Euclid is cloaked in powers of the State of Ohio, the City of Euclid violated

42 U.S.C. § 1983 and 18 U.S.C. § 241 through arresting me, prosecuting me, separating me from my property, denying me equal protection under law, and causing me injury through unusual circumstances contrarily to my rights secured through the First, Fourth, Eighth, and 14th Amendments to the U.S. Constitution, which led to injury to me, for which I am suing the City of Euclid in official capacity." (*Id*. at 2.) Plaintiff asserts the following:

> Evidence in the forms of; e.g., (1) forged documents stating a lie concerning the label of the box in question, (2) the omission of images of the box in question from discovery, (3) two counts of fictitious documents misrepresenting the forensic laboratory, (4) the omitted fact that I was not in California when the package in question was shipped, (5) the utter lack of evidence in prosecuting me, (6) the unreasonableness of the claims made against me, and (7) fictitious documentation misrepresenting the truth of video evidence, reasonably indicates the existence of some local law, policy, custom, or usage by the City of Euclid, as presented to this honorable court.

(*Id*. at 3.) Plaintiff further argues, without explanation, that "such custom does not have to exist in writing as 'acts of omission, as well as commission, may serve as a predicate for finding a policy or custom." (*Id*.) Finally, Plaintiff argues Defendant maliciously prosecuted him, tampered with evidence, falsified evidence, and used a sham legal process, which he claims "establish[es] conspiracy involving a chain of command that went overboard from within The City of Euclid's police department, including from 'officer,' to detective, to sergeant, to lieutenant, to captain, to chief [and perhaps others in between]; then outside the City of Euclid's police department to the City of Euclid's legal department, which decided, over a five month period to unconstitutionally prosecute me, causing injury to me, which was only able to happen, because The City of Euclid is cloaked in State of Ohio powers and acted under color of statute." (*Id*. at 3-4.)

It is well established that a municipal entity may not be sued for injuries inflicted solely

by its employees or agents under § 1983. *Monell*, 436 U.S. at 694. *See also Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015); *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014); *Heyerman v. County of Calhoun*, 680 F.3d 642 (6th Cir. 2012). A plaintiff may only hold a municipal entity liable under § 1983 for the entity's own wrongdoing. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir.2006) ("Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*.") (citing *Monell*, 436 U.S. at 692–94). Or, as the Sixth Circuit explained, "a municipality is liable under § 1983 only where, 'through its deliberate conduct,' it was 'the 'moving force' behind the injury alleged.'" *D'Ambrosio*, 747 F.3d at 388-389 (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (citation omitted).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). To properly allege a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). *See also D'Ambrosio*, 747 F.3d at 386. Moreover, a plaintiff must show a "direct causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred because of the execution of that policy." *Doe v. Claiborne Cnty., Tenn. By. & Through Claiborne Cnty. Bd of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996) (internal quotation

14

marks omitted); *see also Baynes*, 799 F.3d at 621; *Fair v. Franklin Cnty., Ohio*, 2000 WL

659418 at *3 (6th Cir. May 11, 2000) ("*Monell* requires that a plaintiff identify the policy,

connect the policy to the city itself and show that the particular injury was incurred because of

the execution of that policy."); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.

1993) (same).

In sum, in order to avoid dismissal under Rule 12(b)(6), "a plaintiff must adequately

plead (1) that a violation of a federal right took place, (2) that the defendants acted under color

of state law, and (3) that a municipality's policy or custom caused that violation to happen."

*Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Lambert v. Hartman*, 517

F.3d 433, 439 (6th Cir.2008)). *See also Sweat v. Butler*, 90 F. Supp.3d 773, 779-780 (W.D.

Tenn. 2015).

Here, Plaintiff has not identified any custom, policy or practice connected to the City of

Euclid itself that resulted in his alleged injuries. The only mention of a custom or policy in the

Amended Complaint is as follows:

> To state a 42 U.S.C 1983 claim against a municipality, a plaintiff must allege
> [and I do] that "1) a policy or custom existed; 2) the governmental policy
> makers actually or constructively knew of its existence; 3) a constitutional
> violation occurred [by a person acting under the color of state law]; and 4) the
> custom or policy served as the moving force behind the violation."
> *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 532-33 (5th
> Cir. 1996) (citing *Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir.
> 1987)). "Acts of omission, as well as commission, may serve as a predicate for
> finding a policy or custom." *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969,
> 987 (E.D. Tex. 2005) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 463
> (5th Cir.1994)) (emphasis in original).

(Doc. No. 15 at p. 9.) Plaintiff, however, does not identify any particular custom, practice, or

policy[6] of the Defendant City of Euclid, much less one that is relevant to any of the specific constitutional violations alleged in the Amended Complaint. Moreover, Plaintiff does not plead any factual allegations suggesting his particular injury was incurred because of the execution of a City policy or custom. He does not allege, for example, that the City's allegedly unconstitutional actions in this case were the result of an official City policy or custom of violating criminal defendants' constitutional rights in the manner set forth in the Amended Complaint. Nor does he allege his injuries resulted from the City's failure to train and/or supervise (or from the negligent hiring and/or retention of) its police officers or other employees.

This is particularly problematic given the fact the Amended Complaint asserts a variety of different claims under multiple amendments, including the First, Fourth, Fifth, Eighth and Fourteenth Amendments. Indeed, as set forth above, Plaintiff's federal claims involve allegations of unreasonable search and seizure, tampering with evidence, withholding exculpatory evidence, malicious prosecution, various due process violations, and forcing Plaintiff to endure the "extraordinary circumstances" of international extradition, pre-trial detention, and cross-country prisoner transport. Plaintiff fails to connect any of these particular

---

[6] For purposes of *Monell* liability, a government's "official policies" include "decisions of its duly constituted legislative body," *Bd. of Cnty Comm'rs of Bryan Cnty., Okl., v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, L.Ed. 626 (1997), as well as policies "officially adopted or established through the decision-making channels," *Doe*, 103 F.3d at 507. A "custom" is a practice that "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," even though it is not formally approved. *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495–96 (6th Cir.2008) (quoting *Bryan Cnty.*, 520 U.S. at 403–04, 117 S.Ct. 1382); *see also Doe*, 103 F.3d at 508 ("In short, a 'custom' is a 'legal institution' not memorialized by written law." (citing *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.1993))).

alleged violations with a corresponding custom, policy, or practice of the City. Rather, the Amended Complaint essentially attempts to hold the City liable for the actions of individual Euclid police officers (as well as unnamed individuals employed by the Los Angeles Jail, Cuyahoga County Jail, and Prisoner Transportation Services), which the Sixth Circuit has held is insufficient to state a claim under *Monell. See D'Ambrosio*, 747 F.3d at 388; *Arrington-Bey v. City of Bedford Heights, Ohio*, — F.3d -----, 2017 WL 2432389 at * 5 (6th Cir. Feb. 24, 2017) ("Municipalities are not vicariously liable in § 1983 actions merely because they employ someone who has committed a constitutional violation.")

While Plaintiff does recite the phrase "policy and custom" in the Amended Complaint, such bare legal conclusions are not enough to survive a motion to dismiss under Rule 12(b)(6). *See Twombly*, 555 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations.... a plaintiff[ ] [must allege] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal citations omitted). In the instant case, the Amended Complaint's fleeting reference to an unspecified policy or custom does not sufficiently identify a relevant City policy or suggest that Plaintiff's injury was the result of such a policy. *See e.g.*, *Wilson v. Trumbull County Dept. of Job and Family Services*, 2013 WL 5820276 at * 9 (N.D. Ohio Oct. 29, 2013). In light of these pleading deficiencies, the Court finds the Amended Complaint cannot be construed as setting forth a "plausible" claim for municipal liability under § 1983.[7] Accordingly, Plaintiff's

---

[7] The Court recognizes that, in the absence of discovery, civil rights plaintiffs face challenges in pleading the existence of a municipal custom or policy. However, applying the principles set forth in *Twombly* and *Iqbal*, district courts have held that a plaintiff must nevertheless plead sufficient factual allegations to support a claim of municipal liability under § 1983 in order to survive dismissal under Rule 12(b)(6). *See e.g. Sweat,* 90 F.Supp.3d at fn 1

§ 1983 claims are dismissed for failure to state a claim.

### 2. 18 U.S.C. § 241

Plaintiff also alleges violations of 18 U.S.C. § 241. This statute provides:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or
>
> If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured--
>
> They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 241.

It is well established, however, that 18 U.S.C. § 241 is a criminal statute, which does not provide for a private right of action. *See Bishawi v. Northeast Ohio Correctional Center,* 628

---

("After *Twombly* and *Iqbal*, however, courts in this circuit have routinely rejected arguments that a more lenient pleading standard applies to § 1983 claims")(collecting cases); *Vidal v. Lexington Fayette Urban Cnty. Gov't*, 2014 WL 4418113, at *2–3 (E.D. Ky. Sept. 8, 2014); *Hamer v. Cnty. of Kent*, 2014 WL 1276563, at *6 (W.D. Mich. Mar. 27, 2014); *Scott v. Giant Eagle, Inc*., 2013 WL 1874853, at *4 (N.D. Ohio May 3, 2013); *Wilson v. Trumbull County Dept. of Job and Family Services*, 2013 WL 5820276 at * 9 (N.D. Ohio Oct. 29, 2013); *Hutchison v. Metro. Gov't of Nashville & Davidson Cnty*., 685 F. Supp.2d 747, 749 (M.D. Tenn.2010); *Cunningham v. Cleveland Police Dep't*, 2010 WL 5636778 at * 6 (N.D. Ohio Dec.22, 2010); *Wooten v. Spigner*, 2011 WL 5075692 (E.D. Mich. Sept.8, 2011) *adopted by* 2011 WL 5075714 (E.D. Mich. Oct. 25, 2011). Indeed, the Sixth Circuit recently confirmed that the plausibility standard of *Twombly* and *Iqbal* applies to *Monell* claims. *Bailey v. City of Ann Arbor*, — F.3d —, 2017 WL 2641112 at * 5 (6th Cir. June 20, 2017). Here, Plaintiff's perfunctory assertion of an unspecified policy or custom and practice is simply insufficient to state a claim for municipal liability under § 1983, lack of discovery notwithstanding.

Fed. Appx. 339, 346 (6th Cir. Dec. 12, 2014) ("Bishawi is not entitled to relief under 18 U.S.C.

§ 241 because this statute does not provide for a private cause of action for conspiracy.");

*United States v. Oguaju*, 2003 WL 21580657 (6th Cir. July 9, 2003) (finding "[t]he district

court properly dismissed Oguaju's claim pursuant to 18 U.S.C. §§ 241 or 242 because Oguaju

has no private right of action under either of these criminal statutes."); *Thompson v. Cuyahoga*

*County Sheriff's Department,* 2017 WL 1882129 at * 2 (N.D. Ohio May 9, 2017) (stating that

18 U.S.C. § 241 does not provide for a private right of action); *Kelly v. City of Philadelphia*,

2011 WL 3705151 at * 2 (N.D. Ohio Aug. 22, 2011) (same); *Banks–Bey v. Acxiom*, 2010 WL

395221 at * 3–4 (N.D. Ohio Jan.27, 2010) (same).

Accordingly, Plaintiff's claims under 18 U.S.C. § 241 fail to state claims upon which

relief may be granted and are dismissed.[8]

## B.    State Law Claims

Plaintiff also asserts a number of state law claims, including fraud, abuse of process,

---

[8] Plaintiff also references Articles 1, 2, 7, 8, 15, 20, 42, 43, and 45 of "The Rights of Indigenous Peoples." While this document may be of great importance to Plaintiff, it is not recognized by United States federal courts as binding legal authority. *See Bey v. Brown*, 2017 WL 1179126 at * 5 (N.D. Ohio March 30, 2017); *Bey v. Ohio,* 2011 WL 4944396 (N.D. Ohio Oct. 17, 2011); *Bey v. Ohio*, 2011 WL 4007719 at * 2 (N.D. Ohio Sept. 9, 2011); *Salaam El v. City of Dearborn*, 2010 WL 582773 at * 8 (E.D. Mich. Feb. 18, 2010). Although Defendant did not expressly move for dismissal of Plaintiff's claims under either § 241 or "The Rights of Indigenous Peoples," the Court may exercise its discretion to *sua sponte* dismiss these claims as it is clear they do not state plausible claims for relief. *See, e.g., Bey*, 2011 WL 4944396 (*sua sponte* dismissing Plaintiff's claims under "The Rights of Indigenous Peoples" and § 241); *Thompson*, 2017 WL 1882129 (*sua sponte* dismissing Plaintiff's claims under § 241). *See also Cunningham v. Cleveland Police Dep't*, 2011 WL 234050 at * 2 (N.D. Ohio Jan, 24, 2011) (""[A] district court may, at any time, *sua sponte* dismiss a complaint for failing to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit or no longer open to discussion.") (quoting *Allen v. I.R.S.*, 624 F.Supp.2d 689, 692 (N.D. Ohio 2008)).

malicious prosecution, unlawful restraint, falsification of evidence, obstruction of justice, dereliction of duty, interference with civil rights, organizational criminal liability, giving false or fictitious information to law enforcement agents, and sham legal process. (Doc. No. 15.)

The Court has determined Plaintiff's federal claims are subject to dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). This case was before the Court on federal question jurisdiction pursuant to 28 U.S.C. § 1331, and there is no basis for diversity jurisdiction pursuant to 28 U.S.C. § 1332. Thus, the Court must now determine whether to exercise its supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

Subsection (c) of 28 U.S.C. § 1367 provides the Court may decline to exercise supplemental jurisdiction over a state law claim if the Court "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "[D]istrict courts have broad discretion in deciding whether to exercise supplemental jurisdiction[.]" *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) (internal quotation marks and citation omitted). *See also Jones v. Natural Essentials, Inc*., 2017 WL 1133945 at * 8 (N.D. Ohio March 27, 2017).

In making this determination, the Court weighs considerations of judicial economy, convenience, fairness, and comity. *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L.Ed. 2d 720 (1988). "Comity to state courts is considered a substantial interest; therefore, [the Court] applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed—retaining residual jurisdiction 'only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation

outweigh [any] concern over needlessly deciding state law issues.'" *Packard v. Farmers Ins. Co. of Columbus, Inc*., 423 Fed. Appx. 580, 584 (6th Cir. 2011) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (further citation omitted)). When all federal claims are dismissed before trial, the balance of considerations usually point to dismissing the state law claims. *Musson Theatrical, Inc. v. Fed. Express Corp*., 89 F.3d 1244, 1254–55 (6th Cir. 1996) (after a 12(b)(6) dismissal of the federal claims, "there is a strong presumption in favor of dismissing supplemental claims").

The Court has considered the above factors and finds they do not outweigh the substantial interest of comity to state courts in this case. Therefore, the Court exercises its discretion pursuant to 28 U.S.C. § 1367(c) and declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, Plaintiff's state law claims are dismissed without prejudice.

### V. Conclusion

For all of the foregoing reasons, Defendant's "Motion for Judgment on the Pleadings" (Doc. No. 16) is GRANTED as follows. Plaintiff's federal claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and, therefore, those claims are dismissed without prejudice.

**IT IS SO ORDERED.**


Date: June 26, 2017                              *s/ Jonathan D. Greenberg*
                                                 Jonathan D. Greenberg
                                                 U.S. Magistrate Judge